[No. 24037.   Department One.   November 7, 1932.]

THE STATE OF WASHINGTON, *on the Relation of M. L. Pate, Appellant*, v. PAUL H. JOHNS *et al., Respondents.*[1]

*Meier & Meagher* and *Ronald W. Meier,* for appellant.

*The Attorney General, John A. Homer, Assistant,* and *Alfred J. Schweppe (Winlock W. Miller, Jr.,* of counsel), for respondents.

MITCHELL, J.—The complaint in this action on the relation of M. L. Pate against Paul H. Johns *et al.,* as regents of the University of Washington, and E. B. Stevens, as registrar of the University, was filed in the superior court of King county on April 4, 1932.

The allegations of the complaint are to the effect that since September, 1930, the relator, plaintiff, has been continuously domiciled in this state; that, since October, 1930, he has been and is a student at the University of Washington; that the law provides that the University shall charge and collect from each stu-

[1]Reported in 15 P. (2d) 693.

dent registering therein, domiciled in the state one year prior to registration, a general tuition fee of fifteen dollars per quarter and fifty dollars each per quarter from all other students; that, notwithstanding his domicile in the state more than one year prior to his registering for the spring quarter of the year 1932, the defendants wrongfully compelled him to pay a tuition fee of fifty dollars rather than fifteen dollars for the spring quarter; and that the defendants in the future, while plaintiff continues his studies at the University, will wrongfully compel him to pay fifty dollars instead of fifteen dollars per quarter, notwithstanding his domicile in the state.

The prayer of the complaint was that an alternative writ of mandate issue directing the defendants to permit the plaintiff to attend the University upon the payment of a quarterly tuition fee of fifteen dollars; and also to compel the defendants to reimburse the plaintiff for funds heretofore wrongfully taken from him for tuition fees in the University.

An alternative writ or show cause order was issued by the superior court and served on the regents. The defendants appeared specially by a motion to quash the service for several reasons stated in the motion, upon which the contention was made that, while the suit in form is one against the regents of the University, it is in reality, or legal effect, against the state of Washington, which by the terms of Art. II, § 26, of the state constitution and chap. 216, Laws of 1927, p. 331, § 1 (Rem. 1927 Sup., § 886), must be brought in the superior court of Thurston county; that, in such suits, service of process must be had on the *Attorney General* according to chap. 216, Laws of 1927, p. 331, § 2 (Rem. 1927 Sup., § 887); and that the superior court of King county is without jurisdiction.

Upon the motion being argued to and considered by

the court, an order was entered which, after reciting that the relator

". . . in open court waived any and all claim to reimbursement on account of any sums heretofore imposed upon him for tuition fees in the University,"

granted defendant's motion on the ground, among others, in substance, that the action is one against the state, of which the superior court of King county has no jurisdiction. The relator has appealed.

Chapter 48, Laws of 1931, p. 162, § 1, amending Rem. Comp. Stat., § 4546, provides that the University shall charge and collect a general tuition fee of fifteen dollars per quarter from each student domiciled in this state or the territory of Alaska for the period of one year prior to registration, and fifty dollars each per quarter from all other students.

Under chapter 227, Laws of 1927, p. 349 (Rem. 1927 Sup., § 4557), the board of regents is given full control of the University to the extent and in the manner specified in the act, but there is no pretense or claim that tuition fees become the property of the regents in their official capacity or at all. By Rem. Comp. Stat., § 4547, it is plainly provided that such fees shall, within thirty-five days after collection, be paid into the state treasury, and by the state treasurer credited to certain funds to be used in the manner mentioned in the section.

Appellant's first contention on the appeal is:

"This action is not an action against the state of Washington, and need not be brought in Thurston county, Washington, nor does it involve state funds."

The argument is that the action is one to compel the regents "to perform a ministerial duty." With this we cannot agree. If the suit was one to compel the regents to act on an application to fix tuition fees, a ministerial duty would be involved, but here relief is sought as though the issuable fact of domicile for a

specified length of time as alleged in the complaint, necessarily essential to the relief asked, was conceded or already established.

Nor can the application for relief be disposed of free from a consideration of the important question of whether or not the relief sought can be given, whatever the form of the complaint, without affecting some substantial right of the state.

*McWhorter v. Pensacola & Atlantic R. Co.,* 24 Fla. 417, 5 South. 129, 2 L. R. A. 504, 12 Am. St. 220 (cited by appellant upon another point), was a case in which the railroad company brought suit against the railroad commission of the state to test the fairness and legality of freight and passenger tariffs fixed by the commission. The question arose as to whether the suit was one against the state, not named as a party. After stating the issues in the case and referring to the statutes applicable, the court gave what may be adopted as a true test for determining the question, as follows:

"It cannot be said, therefore, that the case under consideration is not a case against the State simply because the record does not bear her name, and, indeed, there has been no contention to that effect. So, the question is whether the case comes within any class in which a suit against officers is of such a character that a judgment or decree cannot be given in it without affecting some right or interest of the State, so that the effective operation of the judgment or decree is really against the State rather than the officers sued. In other words, would a decree against these commissioners be a decree against the State as the actual party?"

That rule applied to the present case makes the state the real party in interest, because the relief sought affects the right of the state to collect revenue to be paid into the state treasurer's office according to the fact of the domicile of each student, with reference to which fact the state is entitled to be heard.

Counsel for appellant cite and quote at length from *McWhorter v. Pensacola & Atlantic R. Co.,* just referred to, as authority for their position in this case, because it was held that the action was maintainable against the railroad commission alone. Upon the face of the conclusion or result in that case, it would appear that counsel here are right, but not so upon consideration of the difference in principle of the two cases. That case related to tariffs to be paid to a transportation company by passengers and patrons, in which the state had no interest other than that of a general nature, so that the court said:

"*There is here nothing that affects the state in any valuable interest of her own,* or affects her otherwise than as she is concerned in having a law of a public nature carried out." (Italics ours.)

The present action, however, does affect a valuable interest of the state, as already mentioned.

The case of *Old Colony Trust Co. v. Seattle,* 271 U. S. 426, 70 L. ed. 1019, is cited by appellant. That case related to the contract liabilities of the parties to the suit to pay taxes on the street railway system that had been transferred to the city. The United States district court, in which the bill and supplemental bill were filed, dismissed them for want of jurisdiction, and allowed a direct appeal to the supreme court, certifying that the sole ground of the dismissal was that the suit was, in effect, a suit against the state and therefore not cognizable in a Federal district court. In reversing the decree, the supreme court said:

"The bills did not name the State as a defendant; nor did they complain of any act or omission by it, or seek any relief against it. They did show that some of the taxes were state taxes and when collected were to be paid over to the State. But they were not directed against the collection of the taxes. *On the contrary,*

*they distinctly treated the taxes as valid and collectible. . . .*

"We think it apparent from this review of the bills that *the suit was not in name or in effect a suit against the State,* but only a suit against state agents to restrain them from wrongful acts threatened and attempted under color of their agency." (Italics ours.)

Appellant cites also *Mullen & Roupe v. Dwight,* 42 S. D. 171, 173 N. W. 645, and quotes portions of the opinion which it is claimed sustain his contention in the present suit. We shall not attempt to define or analyze the setting of those parts of the opinion to show that, when understood, they do not, in our opinion, support the appellant. It is enough to say of that case that it was one in which plaintiffs, as contractors with the regents of the normal school in South Dakota, after completing their contract for the construction and repair of buildings, brought suit in the circuit court against the regents of the school to recover the balance due under the contract, not making the state a party to the suit. Judgment was entered for the plaintiffs in the circuit court. In reversing the judgment and dismissing the action, the supreme court held that the circuit court had no jurisdiction of the cause, because the action against the regents, as such, was, in effect, an action against the state, and was a kind of action which, under the constitution and statutes of the state, could be brought only in the supreme court of the state.

*Kitsap County v. Carson,* 1 Wash. Ter. 419, cited by appellant, is not in point. In that case, the county commissioners, as such, were not made a party, nor was the board of county commissioners, nor the county itself, made a party, nor did either appear in the trial court or in the supreme court.

Nor is *State v. Superior Court,* 167 Wash. 334, 9 P. (2d) 70, helpful to the appellant. That was a case in which, as alleged in the injunction proceedings in the

trial court, the state highway director and employees, as such, were proceeding to change or improve a state highway in such manner that it would damage the real property of the plaintiffs, which conduct it was claimed violated their constitutional rights, because no proceeding had been instituted or had to ascertain compensation to be paid for damages to their property. In the case in this court, it was sought to prohibit the superior court of Walla Walla county from proceeding further, because that suit was one against the state, of which the superior court of Thurston county only had jurisdiction. But it was held that the question of jurisdiction was controlled by another provision of the constitution, Art. I, § 16, that

"No private property shall be taken or *damaged* for public or private use without just compensation having been first made, or paid into court for the owner;"

that, to determine such compensation by eminent domain proceedings, the state should go to the superior court of the county where the land was located, and that, until the state acquired the right to do so, its officers, whatever their good faith, might be enjoined from damaging the property.

Nor, as we view the matter, could the test applicable in the present kind of case have been applied in the Walla Walla county case. There, the state was not the real party in interest entitling it to support its officers whose conduct, though in good faith, was threatening to damage one's private property in violation of the state's own constitution; that kind of a situation creates no real interest on the part of the state. Here, the state is interested in the enforcement of one of its laws designed to produce revenue for the help and maintenance of its University. In this affair, the state has a real, direct and positive interest.

Other cases are referred to by the appellant which we think need not be reviewed. Properly understood, they are not contrary to the views here expressed, should attempt be made to apply them to this kind of a case.

This court has heretofore adopted the test, already mentioned, in this kind of case. *State ex rel. Pierce County v. Superior Court*, 86 Wash. 685, 151 Pac. 108, was such a case. It arose out of a contract for the construction of a highway in Pierce county. The suit in this court had to do with one in the superior court of Thurston county arising out of that contract for the construction of a road in Pierce county, in which suit state officers, but not the state, were parties. State funds were involved in that suit, in which the state officers sought to be enjoined had no interest. It was contended that the superior court of Thurston county had no jurisdiction of the action commenced therein, because it was not an action against the state. But this court said that

"The suit in question, while in form a suit against certain of its executive officers in their representative capacities, is in essence and effect a suit against the state."

Then, upon more particularly defining the suit pending in the superior court, said:

"The charge is . . . that a contract in which the state has an interest, and which, if valid, makes a charge upon the state's funds, is void because of fraud in its inception. Clearly we think such a suit, even though brought against its officer, must in effect be a suit against the state."

That reasoning is applicable here, and it makes no difference whether the suit grows out of, or is connected with, a contract, or relates to the enforcement, or attempt to defeat the enforcement, of a revenue

producing act of the legislature for the benefit of the University.

Our conclusion on this assignment makes it unnecessary to discuss the other assignments.

Judgment affirmed.

TOLMAN, C. J., HOLCOMB, PARKER, and MILLARD, JJ., concur.